FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 28, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

YADIRA G. o/b/o D.R., a minor child,[1]

               Plaintiff,

     v.

ANDREW M. SAUL, the Commissioner
of Social Security,

               Defendant.

No.   4:19-CV-5270-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

     Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Yadira G. brings this lawsuit on behalf of her then-minor child D.R. to appeal a denial of childhood disability benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions;

---

[1] To protect the privacy of the adult social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff," and refers to the then-minor child by her initials. *See* LCivR 5.2(c).

[2] ECF Nos. 13 & 14.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

2) improperly failing to weight D.R.'s testimony and discounting Plaintiff's testimony, and 3) improperly assessing the childhood domains and listings. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 13, and denies the Commissioner's Motion for Summary Judgment, ECF No. 14.

## I.    Three-Step Childhood Disability Determination

To qualify for Title XVI supplement security income benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[3] The regulations provide a three-step process to determine whether a child satisfies the above criteria.[4] First, the ALJ determines whether the child is engaged in substantial gainful activity.[5] Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more

---

[3] 42 U.S.C. § 1382c(a)(3)(C)(i).

[4] 20 C.F.R. § 416.924(a).

[5] *Id.* § 416.924(b).

than minimal functional limitations."[6] Finally, if the ALJ finds a severe impairment, the ALJ must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments."[7]

If the ALJ finds that the child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must determine whether the impairment or combination of impairments functionally equals a listing.[8] The ALJ's functional-equivalence assessment requires the ALJ to evaluate the child's functioning in six domains. These six domains, which are designed "to capture all of what a child can or cannot do," are: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for self, and 6) health and physical well-being.[9] A child's impairment is deemed to functionally equal a listed impairment if the child's condition results in marked limitations in two domains, or an extreme limitation in one domain.[10] An impairment results in a marked limitation if it "interferes seriously with [a child's] ability to independently initiate, sustain, or

---

[6] *Id.* § 416.924(c).

[7] *Id.* § 416.924(c)-(d).

[8] *Id.* § 416.926a(a).

[9] *Id.* § 416.926a(b)(1)(i)-(vi).

[10] *Id.* § 416.926a(a).

complete activities."[11] An extreme limitation is defined as a limitation that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities."[12]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application for childhood disability benefits for D.R. in 2002, when D.R. was a baby.[13] The claim was denied initially and upon reconsideration.[14] Then in January 2005, ALJ Peggy Zirlin found that D.R. was disabled as of May 28, 2002, due to autism.[15]

Eleven years later, in May 2013, the Commissioner determined that D.R.'s health had improved and that she no longer met the disability requirements.[16] Plaintiff sought an administrative hearing. Following that hearing, ALJ Kimberly Boyce found that D.R.'s disability ended as of May 7, 2013.[17] However, the Appeals

---

[11] *Id* § 416.926a(e)(2)(i).

[12] *Id.* § 416.926a(e)(3)(i).

[13] AR 116-19.

[14] AR 89-93 & 96-99.

[15] AR 423-30.

[16] AR 467-70 & 472-99.

[17] AR 1273-1303 & 56-77.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

Council remanded the case back to the ALJ because the Appeals Council was unable to locate the official file on which the ALJ based the unfavorable decision.[18]

In April and August 2018, administrative hearings were held before ALJ Donna Walker.[19] ALJ Walker agreed that D.R.'s disability ended as of May 7, 2013, and that she had not become disabled again. ALJ Walker based her ruling on the following findings:

- Comparison point decision (CPD): the most recent favorable medical decision finding D.R. disabled due to the severe impairment of autism was the determination dated January 7, 2005;

- Medical improvement occurred since the CPD;

- D.R. was a school-age child, as of May 7, 2013, and was an adolescent in 2018;

- D.R. had the following severe impairments: depression, anxiety, attention deficit hyperactivity disorder (ADHD), mild asthma, and nocturnal enuresis; and

- D.R. did not have an impairment or combination of impairments that met, or medically or functionally equaled, the severity of one of the listings.[20]

---

[18] AR 695-97.

[19] AR 1305-83.

[20] AR 35-54.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the testifying opinions of Jerry Seligman, M.D. and Donna Veraldi, Ph.D.;

- significant weight to the non-examining opinions of Beth Fitterer, Ph.D., Norman Staley, M.D., Michael Brown, Ph.D., and Alnoor Virji, M.D.; and

- no weight to the testifying opinion of William Weiss, Ph.D.

The ALJ gave significant weight to the childhood functional domain assessments from D.R.'s teachers.[21] The ALJ discounted the lay statements from Plaintiff (D.R.'s mother).[22]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[23] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[24] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[25] Substantial evidence is "more than a mere

---

[21] AR 48.

[22] AR 45-47.

[23] AR 11-15.

[24] 42 U.S.C. § 405(g).

[25] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[26] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[27] The Court considers the entire record as a whole.[28]

Further, the Court may not reverse an ALJ decision due to a harmless error.[29] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[30] The party appealing the ALJ's decision generally bears the burden of establishing harm.[31]

---

[26] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[27] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[28] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[29] *Molina*, 674 F.3d at 1111.

[30] *Id.* at 1115 (quotation and citation omitted).

[31] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## IV.    Analysis

### A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff challenges the ALJ's assignment of no weight to Dr. Weiss' opinion while giving great weight to Dr. Veraldi's opinion. The Court agrees the ALJ failed to offer specific and legitimate reasons supported by substantial evidence for the weighing of the psychological medical opinions.

### 1.    Standard

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[32] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[33] When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[34] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by

---

[32] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[33] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[34] *Lester*, 81 F.3d at 830.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

substantial evidence.[35] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[36]

### 2. Dr. Weiss and Dr. Veraldi

The ALJ heard testimony from two reviewing psychologists: Dr. Weiss at the April 2018 hearing and Dr. Veraldi at the August 2018 hearing. Dr. Weiss diagnosed D.R. with ADHD, depression, and anxiety disorder.[37] When considering D.R.'s three severe impairments cumulatively, Dr. Weiss opined that D.R. was markedly limited in concentration, persistence, and pace and adapting and managing herself, and moderately limited in her abilities to understand, remember, and apply information and interact with others.[38] Dr. Veraldi recognized the medical record included a diagnosis of ADHD and references to depression and anxiety.[39] Dr. Veraldi opined that D.R.'s abilities to attend to and complete tasks and interact and relate with others were less than marked, and otherwise D.R. had no limitations.

---

[35] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[36] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[37] AR 1313.

[38] AR 1314-15.

[39] AR 1351-52.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ gave great weight to Dr. Veraldi's opinion and no weight to Dr. Weiss' opinion.[40] The ALJ gave great weight to Dr. Veraldi's opinion because 1) she had specialized expertise as a clinical psychologist, 2) she had SSA program knowledge, 3) she had the opportunity to review the entire longitudinal record, 4) she gave detailed testimony that explained the objective and clinical basis for her opinion concerning the functional domains, and 5) the mental status examinations supported her opinion.[41] The ALJ gave no weight to Dr. Weiss' opinion because it was "obvious Dr. Weiss did not spend much time on the file as he could not even find the E section (teacher questionnaires) when I asked him questions, and I had to read it to him," and 2) his opined marked limitations were not supported by the record.[42]

The Court addresses each of these reasons in turn. First, the ALJ gave great weight to Dr. Veraldi's opinion because she had specialized expertise as a clinical psychologist. A doctor's area of expertise is relevant to the determination of how much weight the doctor's opinion should be given.[43] However, Dr. Weiss is also a

---

[40] AR 47-48.

[41] AR 47.

[42] AR 48.

[43] *See* 20 C.F.R. § 416.927(c)5); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

clinical psychologist and therefore possesses specialized expertise.[44] Therefore, this was not a legitimate reason to give more weight to Dr. Veraldi's opinion than to Dr. Weiss' opinion.

Second, the ALJ gave great weight to Dr. Veraldi's opinion because she had SSA program knowledge. An ALJ may consider "the amount of understanding [that a medical source has] of our disability programs and their evidentiary requirements."[45] Here, both Dr. Veraldi and Dr. Weiss served as medical advisors for the Social Security Office of Hearing and Appeals.[46] There is no evidence of record that Dr. Veraldi had more pertinent SSA program knowledge than Dr. Weiss.[47] Therefore, this was not a legitimate reason to give more weight to Dr. Veraldi's opinion than to Dr. Weiss' opinion.

Third, the ALJ gave great weight to Dr. Veraldi's opinion because she had the opportunity to review the longitudinal record. An ALJ may give more weight to

---

[44] AR 937-46 & 1140-44.

[45] 20 C.F.R. § 416.927(c)(6).

[46] AR 1143 & 938.

[47] *See Garcia v. Colvin*, 219 F. Supp. 3d 1063, 1073-74 (D. Col. 2016) (citing cases finding that greater weight should not have been given to opinion merely on the grounds that ALJ deemed the doctor to have SSA program knowledge).

1
2
3
4
5
6
7
8
9
10
11
12
13

an opinion that is based on more record review and supporting evidence.[48] Both Dr. Veraldi and Dr. Weiss had the opportunity to review the pre-April 2018 records. Following Dr. Weiss' testimony at the April 2018 hearing, additional medical and school records were received into the record.[49] The ALJ failed to articulate why or how these additional records necessitate giving more weight to Dr. Veraldi's opinion, which was issued four months after Dr. Weiss' opinion. For instance, the 2011 school Psychoeducational Assessment Summary was already part of the record when Dr. Weiss reviewed the record.[50] While the June 2005 report by Robin McCoy, M.D. was not part of the record that Dr. Weiss reviewed, Dr. McCoy's findings were referenced in several school assessments and summaries that Dr. Weiss reviewed.[51] Moreover, Dr. Weiss agreed with Dr. McCoy's assessment that the prior diagnosis of autism was not supported by the record. Likewise, the "new"

14
15
16
17
18
19
20
21
22
23

---

[48] *See* 20 C.F.R. § 404.1527(c)(6) (specifying that the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight to give that opinion); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion); *Andrews*, 53 F.3d at 1041 (same).

[49] AR 1071-82.

[50] AR 617-23.

[51] AR 1078-80. *See, e.g.*, AR 610, 617-18, 780, 796, & 800-01.

2010 partial clinic note prepared by Charles Cowan, M.D.[52] from the Autism

Center was referenced in the school and medical records that Dr. Weiss reviewed,

and again Dr. Weiss agreed with Dr. Cowan's assessment that D.R. did not meet

the criteria for autism.[53] Finally, the "new" Kadlec medical records pertained to

D.R.'s treatment for a fever and right wrist fracture in 2013, sore throat and fever

in March 2015, sore throat in January 2016, nail removal in February 2016, foot

pain in July 2016, ear pain in September 2016 and November 2017, and fever and

sore throat in January 2018.[54] While Dr. Weiss did not have an opportunity to

review these records, the ALJ fails to articulate why Dr. Veraldi's review of these

medical records pertaining to Plaintiff's physical health necessitate giving more

weight to Dr. Veraldi's opinion than to Dr. Weiss' opinion.

    The ALJ also determined that Dr. Veraldi had reviewed more of the

longitudinal record than Dr. Weiss because the ALJ found that Dr. Weiss had not

reviewed the record:

> We did take testimony from Dr. Weiss at the last hearing. I was of the
> opinion that he did not have a grasp of the record. . . Dr. Weiss was
> not able to answer questions that I asked him that were pretty basic
> about the teacher's records. I did not feel that he had a grasp of the
> record and I think sometimes for some [medical examiners] it's easier
> to testify favorably than it is to spend hours and hours on these big
> paper files. So I didn't have a lot of confidence in his testimony.
> Having said that, I scheduled a psychologist today because I want to

---

[52] AR 1081-82.

[53] *See, e.g.*, AR 610, 618, 628-30, 780, & 1064.

[54] AR 1083-1139.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

> make sure that I make the right decision based on competent,
> psychological testimony.[55]

The ALJ gave no weight to Dr. Weiss' opinion because "[it] was obvious Dr. Weiss did not spend much time on the file" as "he could not even find the E section (teacher questionnaires) when I asked him questions, and I had to read it to him."[56] The ALJ's finding that Dr. Weiss did not review the file (and the teacher questionnaires) is speculative and is contrary to Dr. Weiss' testimony under oath that he reviewed the file, including the school records and the teacher questionnaires.[57] Dr. Weiss' testimony indicates that he was familiar with the record. For instance, Dr. Weiss discussed the at-issue teacher questionnaire during the hearing, quoting from the first four pages of that teacher questionnaire.[58]

---

[55] AR 1345.

[56] AR 47-48.

[57] AR 1312 & 1314-15.

[58] AR 1329-31 (discussing AR 543-50 teacher questionnaire). The teacher evaluations, while largely indicating few limitations at school, mentioned that D.R.—who had an educational plan that allowed her additional time or smaller group assistance—took her time, needed a little more time to do her work, was often times slower in her work because she took a moment longer to process, had problems speaking in class, and was capable but very shy and very quiet. AR 544-45 & 568.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Immediately thereafter, however, the record reflects that Dr. Weiss and the ALJ had communication difficulties as Dr. Weiss apparently mistakenly thought the ALJ had moved to a different portion of the record.[59] After Dr. Weiss stumbled trying to get back to the teacher questionnaire, the ALJ elected to read portions of the teacher questionnaire to Dr. Weiss.[60] Dr. Weiss' testimony as to his record review was then ambivalent given that he did not have the at-issue questionnaire pulled up but instead was testifying based on the ALJ's reading of the questionnaire, i.e., "I usually look at [the E Section] in preparation for the hearing," "I can't recall [reviewing the at-issue teacher questionnaire], but I'm sure I saw it initially," and "I looked through [Section E], yes, but I don't recall specifically seeing that one [signed by Jamie Lawterson]."[61] Yet, the ALJ did not clarify that this was the same teacher questionnaire that they had previously been discussing and that Dr. Weiss had quoted from.[62] Moreover, while Dr. Weiss recognized that teacher evaluations must be considered when assessing a claimant's limitations, Dr. Weiss testified that teachers do not offer psychological opinions and he still abided by his psychological opinion that Plaintiff was

[59] AR 1331.

[60] AR 1333-38.

[61] AR 1334-36.

[62] AR 1328-31; *see also* AR 567-74 (separate teacher questionnaire that was not discussed during hearing).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

markedly limited in her abilities to acquire and use information, attend and complete tasks, and care for self.

All people involved in the April *and* August 2018 administrative hearings—including Dr. Veraldi—recognized that maneuvering through this administrative record, which began as a paper file, was difficult. For instance, not all handwritten exhibit labels contained all exhibit identifying information nor were they easy to read:

| | | | |
|---|---|---|---|
| *Ex16B!1199* | AR 723 (Ex. B16B at 1) | *Ø15F/15* | AR 996 (Ex. B15F at 15) |
| *19B* | AR 736 (Ex. B19B at 1) | *21B4* | AR 741 (Ex. B21B at 4) |
| *2 8 9* | AR 772 (Ex. B17E at 2) | *79* | AR 858 (Ex. B18E at 79) |

The ALJ herself stated, in regard to navigating the file: "these paper files are a challenge."[63] Moreover, Dr. Veraldi testified, "And I will say that I have trouble with the exhibits because I'm not used to opening disks and so the way my computer is doing it, it gives me like four exhibits at a time. So I may have trouble

---

[63] AR 1326-27.

identifying exact exhibits because of that."[64] Later in her testimony, Dr. Veraldi again mentioned that "I have trouble lining up the records."[65] And then the ALJ encouraged counsel to refer to the name of the record rather than the exhibit number in order to assist Dr. Veraldi during her questioning.[66]

Given the confusing exhibit labeling and the different expectations for finding and discussing exhibits for Dr. Weiss and Dr. Veraldi, it was not legitimate for the ALJ to reject Dr. Weiss' opinion on the grounds that he did not review the record, after he failed to find a teacher questionnaire the second time, while giving great weight to Dr. Veraldi's opinion.

Fourth, the ALJ gave more weight to Dr. Veraldi's opinion because the basis for her opinion concerning the functional domains was well explained in her detailed testimony. The quality of the explanation provided in an opinion is a relevant consideration for the ALJ.[67] Here, however, the ALJ failed to explain how Dr. Veraldi's opinion was more well-explained or detailed than Dr. Weiss' opinion.

---

[64] AR 1351.

[65] AR 1355.

[66] AR 1356.

[67] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Both Dr. Veraldi and Dr. Weiss testified. Dr. Weiss' questioning and testimony spans almost thirty pages, while Dr. Veraldi's questioning and testimony spans thirteen pages.[68] Regardless of the level of explanation provided by Dr. Weiss and the records he relied on, it is clear that the ALJ, based on the her belief that D.R.'s mother was driving the disability claim, had a different interpretation of the record than Dr. Weiss. As a result, the ALJ did not accept Dr. Weiss' opinion that D.R. was markedly limited even though his opinion was based on the medical records as he interpreted them:

> ALJ Question: . . . And it seems to be every single visit with the doctors, it's the mom doing the talking, and it just seems to me that this appears to be motivated by the mother. . . .

> Dr. Weiss Answer: You know, that's one interpretation, I believe. I do note that on – in the Columbia Virtual Academy, it was noted – this was, I think, on page 50, that she was not doing well, on – at least not on that particular day. And so – but, you know, we do have documents here that suggest that she was having difficulty . . Anyway, they were by Marsha Vogel, for example. That was one of the documents. Another one was by . . . [Lourdes] Counseling Center. . . . So I thought there was enough there with those three disorders to qualify her for being handicapped and being disabled.

> ALJ Question: Doctor, when I look at all these doctor's visits that the mother initiates, it's the mother doing the talking and the mother prompting the child to make statements about what's going on with her. And I just – this case is very concerning to me, because it just seems to be adult-driven.

> Dr. Weiss Answer: Well, that could be, although one would hope that the people who did the evaluations would understand that and would take that into account. It does state that the appointment was accompanied by her mother. I think you know the one thing that

---

[68] AR 1310-1339 & 1350-62.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

1

2

> could've been done is that a request be made that the child be seen
> without the mother, but I don't see that in here, but I do see these
> progress notes, which are indicative of these problems.[69]

Notwithstanding the ALJ's questioning as to the mother's actions and the medical

and academic records, Dr. Weiss abided by his opinion that D.R. was markedly

limited. An ALJ may not act as her own medical expert, since she is "simply not

qualified to interpret raw medical data in functional terms."[70] And the ALJ must

"do more than state conclusions."[71] The ALJ needed to meaningfully explain why

Dr. Veraldi's testimony was more well-explained and detailed than Dr. Weiss'

testimony in order to allow for more weight to be given to Dr. Veraldi's testimony.[72]

Moreover, Dr. Weiss was available for further questioning if the ALJ deemed his

explanation unsupported.[73] Instead of asking Dr. Weiss further substantive

---

[69] AR 1316-17.

[70] *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

[71] *Garrison*, 759 F.3d at 1012 (internal citations omitted).

[72] *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding).

[73] *See Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (recognizing the ALJ may have a duty to develop the basis for a medical opinion through inquiry).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

questions about the impact of the at-issue teacher questionnaire, the ALJ simply asked Dr. Weiss whether he had reviewed the at-issue questionnaire.[74] On this record, the ALJ's finding that Dr. Veraldi's opinion was more well-explained and detailed and therefore entitled to greater weight was not a legitimate finding supported by substantial evidence.

Finally, on this record, the last reason relied on by the ALJ to give more weight to Dr. Veraldi's opinion—that the mental status examinations supported Dr. Veraldi's opinion—is not a sufficient reason by itself to support the ALJ's weighing of the medical evidence. This is because, as is mentioned above and discussed below, the ALJ's interpretation of the mental status examinations was impacted by the ALJ's finding that the mother was motivated to bring this claim for financial purposes.

On remand, the ALJ is to reweigh the medical evidence, including reevaluating the mental status examinations. When considering the mental status examinations, the ALJ is to consider the context and purpose for which the mental status examination findings were made.

In summary, the ALJ erred when weighing these psychological medical opinions.

---

[74] AR 1332-36.

**B.    D.R.'s Testimony: Plaintiff establishes consequential error.**

An ALJ must consider the child claimant's offered testimony about her symptoms when assessing her functional limitations. [75] And if an ALJ discounts a claimant's reported symptoms, the ALJ is to give "specific, clear, and convincing reasons" for the rejection.[76]

Here, D.R. was sixteen years old when she testified at the August 2018 hearing. D.R. reported difficulty speaking to people (including her therapists), sadness and a depressed mood most of the time, trouble sleeping and low energy, difficulty concentrating as she got easily distracted (though it helped if she had someone to keep her on task), she sometimes thought about hurting herself, she easily got angry or upset at people, and she had fear and anxiety about going to school and to stores.[77] The ALJ did not identify what weight she gave to D.R.'s symptom reports—reports that were reasonably consistent with Dr. Weiss' opinion that Plaintiff was markedly limited in her abilities to concentrate, persist, and maintain pace and adapt and manage herself. The ALJ erred by not offering specific, clear, and convincing reasons for not accepting Plaintiff's reported symptoms.

---

[75] 20 C.F.R. § 416.926a(e) (citing to 20 C.F.R. § 416.929).

[76] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[77] AR 1373-78.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**C.      Plaintiff/Mother's Testimony: Consequential error is established.**

The ALJ discounted Plaintiff's (D.R.'s mother's) testimony for several reasons.[78] "Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific and germane reasons" supported by substantial evidence.[79] Here, the ALJ discounted the mother's testimony about D.R.'s symptoms because 1) the disability claim appeared to be driven by the mother, 2) the symptoms were caused by D.R. missing school, 3) the mother was a cause of D.R.'s symptoms, 4) the reported symptoms were inconsistent with D.R.'s teacher's reports; and 5) they were inconsistent with the mental status examinations.

Although the ALJ articulated several reasons for discounting the mother's testimony, the ALJ's findings that the mother pursued this claim for merely financial reasons and that she caused some of D.R.'s symptoms and limitations were speculative, were not supported by substantial evidence, and impermissibly influenced the ALJ's analysis.[80] The document cited by the ALJ in support of her finding that the disability claim "appears driving by the mother"[81] does not constitute substantial evidence. That record reflects that D.R. had physical and

--------

[78] AR 44-47.

[79] *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

[80] AR 46.

[81] AR 46.

mental impairments for which medical, academic, and social-services assistance

was needed:

> Mother is interested in trying to get a better "diagnosis" for [D.R.].
> She feels that getting a diagnosis is very important so that other
> services can be provided for her including support through Division of
> Developmental Disabilities (personal care/respite care hours).

> More than 50% of this 65-minute clinic appointment was spent in care
> coordination and counseling as outlined above. We are going to try
> and get additional information, both from the school (release was
> signed by mother today) and to see if we can identify other potential
> mental health resources in the Tri-Cities area that will accept this
> family's Molina insurance. The school reports that she is very capable
> of doing the work but that her grades and learning are affected by
> poor school attendance.

> I think there is a strong support for this type of support services.[82]

The authoring physician supported the mother's attempts to seek medical and

support services for D.R. Moreover, when the ALJ questioned Dr. Weiss about

whether he believed D.R.'s social security disability claim was motivated by her

mother,[83] Dr. Weiss acknowledged that was one interpretation of the record but he

abided by his opinion that the records, including the Columbia Virtual Academy

and Lourdes Counseling Center records, indicated that Plaintiff was markedly

---

[82] AR 629-30.

[83] AR 1316.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

limited.[84] On remand, the mother's assertiveness at seeking medical, social, and academic help is not to be used to discredit the mother's testimony.[85]

Also on remand, the ALJ is to consider whether Plaintiff's school absences and tardies, which the ALJ deemed to be a "primary issue" leading to D.R.'s academic challenges, were reportedly due to D.R.'s mental impairments.[86] While there is a note that the mother did not send the children to school when she left town on a particular occasion, there is no evidence that this was a routine occurrence, and neither did the ALJ consider why the mother elected not to send D.R. to school for those days, such as whether D.R.'s anxiety would have made it difficult for her to function at school when her mother was out of town.[87] On

---

[84] *Id.* ("So I thought there was enough there with those three disorders to qualify her for being handicapped and being disabled."). The Court highlights that the transcript refers to the Lourdes Counseling Center as the Wertz Counseling Center. AR 1063-69 & 1316

[85] *See Panas on behalf of M.E.M. v. Comm'r, SSA*, 775 F. App'x 430, 440 (10th Cir. 2019) (finding the ALJ erred by discounting the parent's testimony about the child's symptoms on the grounds that the parent was financially motivated to being the disability claim on the child's behalf).

[86] AR 46.

[87] *See* AR 549 ("She gets sick often and misses a lot of school. Her attendance is poor and has been throughout her elementary career.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

remand, if the ALJ discounts D.R.'s reported symptoms on the grounds that D.R. missed school, the ALJ is to explore whether D.R.'s absences were due to medical or non-medical reasons.[88]

In addition, on remand, the ALJ may not discount the mother's testimony on the grounds that she spoke for D.R. at medical appointments and at the hearing. The ALJ's statement, "One wonders, in the presence of glowing reports by teachers, if the claimant would do much better if allowed to speak for herself," is mere speculation.[89] D.R. was a minor who suffered mental impairments, including depression and anxiety. Dr. Weiss testified that there was no note in the medical record indicating that a medical provider was concerned about the mother's presence during the medical visit.[90] Before discounting the mother's testimony on this basis, the ALJ must consider whether the mother speaking for her daughter was appropriate in that particular setting, such as whether the mother spoke because D.R. declined to speak to the medical professional due to her mental-health impairments.

---

[88] *See* 20 C.F.R. § 416.924(b)(7)(v).

[89] AR 47. The "glowing reports by teachers" reflected the teachers' comments that D.R. was not disruptive in class and that she performed good work when complete.

[90] AR 1317.

**D.    Other Steps: The ALJ must reevaluate.**

Because the ALJ erred when weighing the medical evidence and D.R.'s and the mother's testimony, the Court will not analyze Plaintiff's remaining arguments. The ALJ on remand is to reevaluate whether Plaintiff's impairments medically or functionally equal a listing.

**E.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The Court declines to award benefits.

The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."[91] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[92] However, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three credit-as-true conditions are met and the record reflects no serious doubt that the claimant is disabled.[93]

---

[91] *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[92] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

[93] *Garrison*, 759 F.3d at 1020 (citations omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Here, the opinions of Dr. Weiss and Dr. Veraldi conflict. On remand, the ALJ is to reweigh the medical opinions. But before doing so, the ALJ is to order a psychological consultative examination (without the mother present).[94] The Court recommends that the consultative examiner be given enough medical and academic records to allow for a longitudinal perspective as to D.R.'s psychological health.[95] The ALJ is to consider and weigh D.R.'s testimony and the mother's testimony. The ALJ is to then reevaluate the sequential disability analysis.

The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.[96] Based on the language and tone used by the ALJ during the administrative hearings and in her written decision, it is clear the ALJ had a strong negative reaction to the mother seeking social, academic, and medical services for D.R. This negative reaction colored the ALJ's reading of the record. As a result, she did not fully or fairly develop the record. For instance, the ALJ did not question Dr. Weiss further after it was clear

---

[94] 20 C.F.R. 20 C.F.R. 16.919a(b). D.R. is now 18. While a consultative examination when D.R. was a minor would have been best, a consultative examination now that she is an adult is to be held.

[95] If a consultative examination is ordered, the consultative examiner is to append the records that the examiner reviewed to the report, or at a minimum clearly identify the records reviewed.

[96] *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

that Dr. Weiss abided by his decision that D.R. was markedly limited and that he did not view the case as being driven by D.R.'s mother. In addition, contrary to Dr. Weiss' suggestion that the ALJ order a consultative examination without the mother present if the ALJ was concerned that the mother was driving the disability claim, the ALJ did not order a consultative examination before the next administrative hearing. And then on the grounds that Dr. Weiss had not reviewed the record, the ALJ obtained testimony from a different psychologist at the second hearing. This record and procedural history reflect that the ALJ's evaluation was impacted by her impression that the mother was impermissibly driving the disability claim.

To ensure an unbiased review on remand, the Court finds it prudent that a different ALJ be assigned on remand. [97] While directing that a different ALJ hear the matter on remand is rare, such is necessary here to ensure that the disability evaluation is not influenced by any suggestion of bias.

In addition, to aid in an orderly review, the Commissioner should consider whether to create an electronic record that contains hyperlinks to the respective exhibits.

---

[97] *See* 20 C.F.R. § 940.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 28

Accordingly, remand for further proceedings, rather than for an award of benefits, is necessary.[98]

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 28th day of July 2020.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

---

[98] *See Garrison*, 759 F.3d at 1021; *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).